UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN HOPKINS, BRODY PUCKETT, on behalf of themselves, individually, and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>STRYKER SALES CORPORATION, a Michigan Corporation; and DOES 1 to 100, inclusive,<br><br>　　　　　Defendants. | Case No.: 5:11-CV-02786-LHK<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION |

Before the Court is Plaintiffs John Hopkins's and Brody Puckett's ("Plaintiffs") Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23 ("Class Certification Motion"), filed April 4, 2012. The Court held a hearing on the motion on May 10, 2012. Having considered the parties' submissions, arguments, and the relevant case law, the Court GRANTS Plaintiffs' Class Certification Motion for the reasons set forth below.

I.  BACKGROUND

　　A. Parties

Plaintiffs John Hopkins ("Mr. Hopkins") and Brody Puckett ("Mr. Puckett") are former employees of Defendant Stryker Sales Corporation ("Stryker"). Mr. Hopkins was a Stryker Sales Representative in California from February 2005, to December 10, 2010. Hopkins Decl. ¶ 4. Mr. Puckett was a Stryker Sales Representative in California from November 1, 2006, to October 2009. Puckett Decl. ¶ 4.

Stryker is a medical device company that manufactures and distributes medical devices around the world and employs sales representatives to market those products to hospitals, surgery

centers, and doctors.  Compl. ¶11; Decl. of Dale A. Anderson in Supp. of Pls.' Mot. ("1st Anderson Decl.") Ex. 19 ("Glynn Dep."), at 65:9-18; Ex. 22 ("O'Brien Dep."), at 20:13-21:4; Ex. 21 ("Brusseau Dep."), at 80:6-19, 85:19-86:1, 86:23-88:5.

Plaintiffs allege that that between April 20, 2007, until February 1, 2011 ("the putative class period"), Stryker had a policy of not reimbursing sales representatives for their ordinary business expenses in three of Stryker's four divisions: (1) Endoscopy; (2) Communications; and (3) Instruments.  1st Anderson Decl. Ex. 1, at 3.[1]  The Instruments Division is further broken down into four business units: (1) Stryker Surgical; (2) Stryker Neuro/Spine/Ear, Nose and Throat ("ENT"); (3) Stryker Interventional Spine ("IVS"); and (4) Stryker Navigation.[2]  Brusseau Dep. 24:14-21.  Mr. Puckett and Mr. Hopkins both worked in the Endoscopy Division.  Puckett Decl. ¶ 11; Sterchi Decl. ¶ 3.

### B. Sales Representatives' Duties and Ordinary Expenses

Stryker sales representatives had the same basic duties across these three divisions.  *See* Glynn Dep. 60:12-17; 65:20-66:1.  For example, the job descriptions for "Sales Representative" all include the following duties: planning, directing, coordinating, and promoting the sale of Stryker products.  1st Anderson Decl. Exs. 2-4.  According to Plaintiffs, sales representatives were specifically responsible for making presentations of Stryker products to physicians, hospitals, and surgery centers; following through with sales; providing service after the sale; and maintaining the relationship with existing clients.  Hopkins Decl. ¶¶ 5-8, 11; Puckett Decl. ¶ 5.

Plaintiffs cite evidence in the record that putative class members commonly incurred the following business expenses, among others, in carrying out his or her duties: (1) mileage expenses from driving to and from client sites, Glynn Dep. 69:16-22, 101:24-103:4, 120:14-23, 124:8-125:4, 149:17-150:5, 167:25-168:2; Brusseau Dep. 86:5-14, 88:2-5, 91:13-15, 163:7-164:22; Anderson Decl. Ex. 5, at 1; Hopkins Decl. ¶¶ 5, 8; Puckett Decl. ¶ 7; (2) internet fees to access Stryker email

---

[1] A fourth division, Neurovascular, is not at issue in this lawsuit because this division was acquired by Stryker on January 1, 2011 and, according to Plaintiffs, complied with California law by reimbursing necessary business expenses.  Mot. 7 n.5 (citing O'Brien Dep.).
[2] At the May, 10, 2012 hearing on the motion, Plaintiffs stipulated to excluding from the proposed class definition sales representatives employed in the Navigation business unit.  Accordingly, the Court does not discuss this unit in its analysis.  Hereinafter, any reference to the Instruments Division excludes the Navigation business unit, unless otherwise noted.

2
Case No.: 5:11-CV-02786-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

account and online materials, Glynn Dep. 73:4-5, 161:21-162:22, 163:21-22, 167:13-23; Brusseau Dep. 95:7-9; 163:7-164:22; 1st Anderson Decl. Ex. 5, at 1; Hopkins Decl. ¶10; Puckett Decl. ¶8; (3) fax line, Brusseau Dep. 95:10-11, 163:7-164:22; 1st Anderson Decl. Ex. 5, at 1; Hopkins Decl. ¶ 10; Puckett Decl. ¶ 8; and (4) cell phone expenses to contact clients, Glynn Dep 160:6-161:10, 165:3-8, 167:8-9; 168:11-19; Brusseau Dep. 163:7-164:22; 1st Anderson Decl. Ex. 5, at 1; Hopkins Decl. ¶ 7; Puckett Decl. ¶ 6. Plaintiffs also allege that putative class members commonly incurred expenses for storage, land line phones, faxes and photocopies, hotels, airfare, meals, postage, trade shows, parking, tolls, etc. Mot. 9 (citing Hopkins Decl. ¶ 11; Puckett Decl. ¶ 9; 1st Anderson Decl. Exs. 5, 15-16; Glynn Dep. 159:211-172:8; Brusseau Decl. 163:6-165:4). A document produced by Stryker states that "the more common expenses incurred by sales reps in the course of business are the following": mileage, hotel, airfare, meals, postage, trade shows, car rental, parking, tolls, office supplies, taxi/car service, internet fees, cellular phone, land line phone, faxes/photocopies, and dues. 1st Anderson Decl. Ex. 5, at 1.

Stryker, on the other hand, cites evidence that suggests that business expenses varied by sales representative. For example, Stryker cites evidence showing variation between sales representatives in the mileage incurred. *Compare* Hopkins Decl. ¶ 8 (Mr. Hopkins would drive "hundreds of miles each day"), *with* Evans Decl. ¶ 12 (noting that one sales representative's furthest distance between accounts is 6 miles). Stryker also cites evidence that there were no uniform requirements for sales representatives to have home offices, internet access, fax lines, cellular phones, storage units, or miscellaneous expenses. *See, e.g.*, Glynn Decl. ¶¶ 7-9; Jacobitz Decl. ¶¶ 9, 12, 16; Kloes Decl. ¶ 8.

### C. Reimbursement Policy for Ordinary Business Expenses

Plaintiffs cite evidence that Stryker had a policy not to reimburse putative class members for ordinary business expenses. For example, Plaintiffs have attached a series of letters Stryker sent sales representatives in the Endoscopy and Instruments divisions between 2007 and 2010, which state, "All business expenses are to be paid by the Sales Representative." 1st Anderson Decl. Exs. 6-14. Another document states, "Generally, expenses incurred by Endoscopy and Communications Sales Representatives are not eligible for reimbursement. These expenses should not be submitted for reimbursement by either the Sales Representative or the Regional Manager.

3

Case No.: 5:11-CV-02786-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

In rare instances, exceptions to this guidance may arise if a Sales Representative is asked to attend courses, site visits or other events which are not part of his day-to-day job." 1st Anderson Decl. Ex. 15, at 4.  Plaintiffs cite Stryker's 30(b)(6) witness testimony stating that Stryker's policy was not to reimburse putative class members' ordinary business expenses. *See, e.g.*, MacLeod Decl. 60:19-25.

Stryker's 30(b)(6) witnesses testified that Stryker's policy was to cover putative class members' ordinary business expenses through their sales commissions. *See, e.g.*, MacLeod Dep. 47:13-15 ("We paid them commissions . . . at a rate to cover their general day-to-day expenses."); Brusseau Decl. 167:4-5 ("Most of the [ordinary business] expenses incurred were covered through the commission structure prior to 2011.").  Stryker also cites evidence showing that sales representatives within the Endoscopy, Communications, and Instruments Divisions could request reimbursement and did so. *See, e.g.*, Evans Decl. ¶ 7-8; Florczyk Decl. ¶¶ 9-10;  Brusseau Decl. ¶¶ 5, 7; Bergsma Decl. ¶¶ 7-8, Ex. A.  According to Stryker's evidence, in 2007 Stryker informed its sales representatives in the Communications Division that a .4% increase in the sales representatives' commission rate was intended to cover their business expenses. Florczyk Decl. ¶ 9.

Stryker also cites evidence that there was variation in what business expenses Regional Managers would actually reimburse, both within a division and among the three divisions. *See, e.g.*, Sterchi Decl. ¶¶ 7, 9, 13-15 (Endoscopy Division on occasion paid or reimbursed expenses such as gas, travel to annual regional meetings, storage, shipping, meals, hotels and expenses associated with large client proposals); Robinson Decl. ¶6 (Endoscopy Division on occasion paid or reimbursed expenses such as airfare for a site visit); Florczyk Decl. ¶ 10 (Communications Division on occasion reimbursed travel expenses, parking, baggage fees, internet fees, vendor credentialing fee, and hotel expenses); Bergsma Decl. ¶¶ 9, 10 (One Regional Manager in Instruments Division generally covered shipping and sometimes hotel expenses); Johnson Decl. ¶ 9 (Instruments Division on occasion covered vaccinations); Peters Decl. ¶ 13 (Instruments Division on occasion covered airport parking).

Plaintiffs cite evidence that putative class members were not informed that a portion of their compensation was designed to reimburse for ordinary business expenses. *See, e.g.*, MacLeod Dep.

63:24-66:7; 68:24-69:8; Brusseau Dep. 142:20-145:19; Hopkins Decl. ¶ 16; Puckett ¶ 15. Stryker cites evidence that, to the contrary, shows that putative class members were informed that a portion of their compensation was designed to reimburse ordinary business expenses. *See, e.g.*, Reeves Decl. ¶ 6; Florczyk Decl. ¶ 10; Slibeck Decl. ¶ 9, Ex. A.

Plaintiffs cite evidence that Stryker changed its policy in February 2011 to directly reimburse business related expenses. MacLeod Dep. 29:20-30:21; 1st Anderson Decl. Ex. 16, at 2; *id.* Ex. 17, at 1. Stryker's cited evidence acknowledges this policy change, but Stryker characterizes this change as a "clarif[ication]." *See, e.g.*, Glynn Decl. ¶ 10.

### D. Procedural Background

Plaintiffs filed this action in the Santa Clara County Superior Court on April 20, 2011. ECF No. 1. Plaintiffs' complaint asserts two state law claims: (1) failure to indemnify in violation of Cal. Lab. Code § 2802,[3] and (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*

Stryker removed the action on June 8, 2011. ECF No. 1. On June 15, 2011, the case was reassigned to the undersigned judge. ECF No. 9. On April 4, 2012, Plaintiffs filed the instant motion for class certification. ECF No. 26. On April 18, 2012, Stryker opposed the motion. ECF No. 26. Plaintiffs filed their reply on April 25, 2012. ECF No. 30.

Plaintiffs seek to certify the following class: "All employees who were employed by defendant during the class period in California who hold the title of 'Sales Representative.'"[4] Mot. 3. According to Stryker's responses to interrogatories, the putative class members are distributed among the three relevant Stryker Divisions as follows: 57 in the Endoscopy Division; 19 in the Communications Division; 57 in the Instruments Division.[5] 1st Anderson Decl. Ex. 1, at 3. The

---

[3] Plaintiffs' motion clarified that the listing of Cal. Labor Code § 226 in the caption of the complaint and in the first claim is in error. Mot. 6 n.3. Plaintiffs' first claim is therefore only under Cal. Lab. Code § 2802.
[4] The complaint defined the class as follows: "All employees who have been employed or are currently employed by defendant during the Relevant Time Period in California who hold the title of "Sales Representative." Compl. ¶ 29. Stryker does not object to the minor change in wording. At the May 10, 2012 hearing on the motion, in response to the Court's questioning, Plaintiffs conceded that the proposed class definition excluded the Neurovascular Division and the Navigation Unit of the Instruments Division.
[5] Although 57 sales representatives were in the Instruments Division during the class period, the parties did not know how many sales representatives worked in the Navigation Unit, which, as discussed above, is excluded from the proposed class. However, Stryker has submitted

5
Case No.: 5:11-CV-02786-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

class period is defined as the period from April 20, 2007, to February 1, 2011.[6] *Id.* Plaintiffs seek an order: (1) appointing Messrs. Hopkins and Puckett as class representatives; (2) appointing Marlin & Saltzman, LLP and United Employees Law Group PC as class counsel; and (3) authorizing Plaintiffs to send notice to all absent class members. Mot. 4.

## II.  LEGAL STANDARD

Class certification of Plaintiffs' Cal. Lab. Code § 2802 and UCL[7] claims is governed by Federal Rule of Civil Procedure 23. Whether or not to certify a class is within the discretion of the Court. *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Service Workers Int'l Union, AFL-CIO CLC v. ConocoPhillips Co.*, 593 F.3d 802, 807 (9th Cir. 2010).

"As a threshold matter, before reaching the requirements of Rule 23, the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Gray v. Golden Gate Nat. Recreational Area*, 279 F.R.D. 501, 2011 WL 7710257, at *7 (N.D. Cal. Aug. 30, 2011) (citing *Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009)).[8]

Under Federal Rule of Civil Procedure 23(a), Plaintiffs must establish that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are "commonly referred to as

---

declarations showing that the number of Sales Representatives in the Navigation Unit in California ranged from three to six in any given year during the class period. Kloes Decl. ¶ 3; Slibeck Decl. ¶ 3.

[6] Plaintiffs' motion clarified that although the complaint defined the "relevant time period" as the period between April 20, 2007 to April 19, 2011, Plaintiffs concede that as of February 2011, Stryker's reimbursement policy has complied with California law. Accordingly, Plaintiffs redefine the "relevant time period" to be from April 20, 2007, to February 1, 2011. Stryker does not object to this changed definition.

[7] Plaintiffs are proceeding on the "unlawful" prong of the UCL, which is derivative of the alleged Cal. Labor Code § 2802 violation. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (noting that the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."). Thus, whether the putative class is certifiable as to the UCL claim depends on whether it is certifiable as to the section 2802 claim. *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 737 (9th Cir. 2007). Accordingly, although the Court limits its Rule 23 analysis to the section 2802 claim, this analysis applies with equal force to the UCL claim.

[8] Stryker concedes, and the Court finds, that the putative class is ascertainable and that it can be readily determined whether a particular individual is a member of the class.

the numerosity,[9] commonality, typicality, and adequacy requirements." *Norris-Wilson v. Delta-T Group, Inc.*, 270 F.R.D. 596, 601 (S.D. Cal. 2010). Plaintiffs bear the burden of establishing that all four requirements of Rule 23(a) are met. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

Additionally, Plaintiffs must establish one of the three requirements of Rule 23(b). *Id.* Plaintiffs here seek to certify a class for their claims pursuant to Rule 23(b)(3). See Mot. 15. In order to certify a class pursuant to Rule 23(b)(3) the court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### III. ANALYSIS

#### A. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class," although "[a]ll questions of fact and law need not be common to satisfy the rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). To satisfy Rule 23(a)'s commonality requirement, a class claim "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). As the Supreme Court explained in *Dukes,* the key consideration in assessing commonality is "not the raising of common questions—even in droves—but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal citations and quotation omitted; emphasis in original).

Here, Plaintiffs contend that Stryker had a policy of not reimbursing putative class members' necessary business expenses in violation of Cal. Lab. Code § 2802. Cal. Lab. Code §

---

[9] Stryker does not contest numerosity. Given that there are approximately 130 putative class members, the court finds that Rule 23(a)(1)'s numerosity requirement is met. Anderson 1st Decl. ¶ 2; *see also Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419, 425 (N.D. Cal. 2011) ("a class greater than forty often satisfies the requirement, while one less than twenty-one does not").

2802(a) provides: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . ." The California Supreme Court has held that "an employer may satisfy its statutory business expense reimbursement obligation under section 2802 by paying employees enhanced compensation in the form of increases in base salary or commission rates, provided the employer establishes some means to identify the portion of overall compensation that is intended as expense reimbursement, and provided also that the amounts so identified are sufficient to fully reimburse the employees for all expenses actually and necessarily incurred." *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 575 (2007).

District courts throughout this circuit have found that commonality is met when, as here, the proposed class of plaintiffs asserts that an employer adopted a policy of not reimbursing its employees' necessary business expenses in violation of Cal. Bus. Code § 2802. *See, e.g.*, *Schulz v. QualxServ, LLC*, Nos. 9-CV-17-AJB, 9-CV-2081, 2012 WL 1439066, at *3 (S.D. Cal. Apr. 26, 2012) (Plaintiffs meet commonality "because they challenge uniform policies and systemic practices that apply to this class of employees"); *Drake v. Morgan Stanley & Co., Inc.*, CV 09-6467 ODW RCX, 2010 WL 2175819, at *4 (C.D. Cal. Apr. 30, 2010) (determining whether defendant's "'company-wide corporate practices and policies' violate California law is sufficient to satisfy Rule 23(a)(2)"); *Stuart v. Radioshack Corp.*, C-07-4499 EMC, 2009 WL 281941, at *7 (N.D. Cal. Feb. 5, 2009) (noting that uniform policy on reimbursement for business trips usually sufficient to satisfy commonality requirement) (citing *Parish v. Sheriff of Cook County*, No. 07 4369, 2008 U.S. Dist. LEXIS 87140, at *8-9 (N.D. Ill. Oct. 24, 2008)).

Plaintiffs meet the commonality requirement here because, at this stage of the litigation, the evidence shows that the putative class members worked as Stryker sales representatives in divisions with uniform business expense reimbursement policies that, Stryker claims, reimbursed putative class members' necessary business expenses primarily through Stryker's commission-based compensation system. Indeed, Plaintiffs cite company documents that state: "all business expenses are to be paid by the Sales Representative." 1st Anderson Decl. Exs. 6-14. While Stryker cites some evidence that Regional Managers in some divisions reimbursed certain

8

Case No.: 5:11-CV-02786-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

extraordinary business expenses on occasion, on this record, reimbursement for ordinary expenses such as mileage appears to have been an exception. Furthermore, this evidence is consistent with a policy that business expenses are "[g]enerally not eligible for reimbursement" and "should not be submitted for reimbursement," except in rare instances that "are not part of [a sales representative's] day-to-day job." 1st Anderson Decl. Ex. 15.

Stryker attempts to defeat commonality by asking a series of questions that go to whether Stryker complied with *Gattuso* by paying higher commission rates in lieu of reimbursing business expenses directly. Specifically, Stryker argues that Plaintiffs cannot satisfy the commonality requirement because there are not common answers to the following questions: (1) Did Stryker adopt a practice or policy of reimbursing its Sales Representatives for business expenses by paying them higher commission rates?; (2) Did Stryker establish a method to apportion the enhanced compensation payments between compensation for labor performed and expense reimbursement?; (3) Was the amount paid for expense reimbursement sufficient to fully reimburse Sales Representatives for their business expenses?; (4) Were the expenses reasonably and necessarily incurred by Stryker's Sales Representatives? The Court disagrees.

The mere fact that these questions may not all yield common answers across all divisions does not obviate the fact that the *central question* in this case is whether Stryker's business expense reimbursement policy violated Cal. Labor Code § 2802. The answer to this latter question will likely generate a common answer "apt to drive the resolution of this litigation." *Dukes*, 131 S. Ct. at 2551. Moreover, the answer to Stryker's first question will yield a common answer. That is, the record evidence suggests that if Stryker in fact covered all of its representatives' business expenses, it did so by paying a higher commission rate across all three of the relevant divisions. Whether Stryker paid a higher commission rate "that necessarily encompasses expenses," as Stryker argues, is "a uniform defense" under *Gattuso*. *Schulz*, 2012 WL 1439066, at *4 (citing *Gattuso*, 42 Cal. 4th 554). Thus, whether Stryker's "policies and practices comply with California's specific requirements is the type of question that can be answered on a classwide basis." *Id.* (citing *Dukes*, 131 S. Ct. at 2551).

As to the second question, Stryker argues that there are differences between divisions as to whether Stryker established a method to apportion the enhanced compensation payments between compensation for labor performed and expense reimbursement. Stryker cites the example of the Communication Division's 2007 decision to increase its commission percentage .4% explicitly to cover business expenses in lieu of reimbursing business expenses directly. Plaintiffs, on the other hand, cite the deposition of Mr. MacLeod, Stryker's 30(b)(6) witness for Communications Division, that he did not have a "breakout" as to "how much a sales rep's commission was set aside to cover ordinary business expenses prior to February 2011." MacLeod Dep. 66:20-25. Thus, it is unclear whether the .4% increase in the Communication Division's commission rate was actually intended to cover necessary business expenses. Moreover, at the May 10, 2012 hearing on the motion, Stryker conceded that it is unclear whether the Communications Division adopted its commission-based reimbursement policy before or after the beginning of the class period, i.e. April 20, 2007. Thus, on these disputed and uncertain facts, it seems that Stryker's second question may ultimately yield a common answer.

As to the third question, Stryker argues that whether the amount paid for expense reimbursement was sufficient to fully reimburse Sales Representatives for their business expenses requires a highly individualized inquiry that defeats commonality. It is possible that the answer to this question is "no"; that is, the commissions fell short of compensating each and every putative class member for all of his or her necessary business expenses. The fact that Stryker may have reimbursed some individuals more than others or that some individuals may have incurred more expenses than others does not destroy commonality. *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975) (commonality not "defeated by slight differences in class members' positions"). Differences in the amount of an individual class member's damages do not defeat class certification. *Id.* at 905; *accord Stearns v. TicketMaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010).

Finally, Stryker argues that whether an expense was reasonably and necessarily incurred by Stryker's putative class members is also an individualized inquiry which defeats class certification. However, as Stryker notes, whether a business expense is necessary per section 2802 is a question

of fact that can be ascertained by a jury. Opp'n (citing *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1124-25 (S.D. Cal. 2006)). Here, it is undisputed that all of the putative class members had the same general duties. At this stage, the evidence suggests that "there were common types of expenses incurred by Sales Representatives." *Cf. Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1022 (N.D. Cal. 2010) (declining to certify class where plaintiff filed to show "common types of expenses incurred by Sales Representatives"). Indeed, Stryker's own documents show that some expenses, like "mileage," "cellular phone," and "internet fees" were "some of the more *common* expenses incurred by sales rep in the course of business." 1st Anderson Decl. Ex. 5, at 1 (emphasis added). Thus, a factfinder could look at the putative class members' duties and the common types of expenses and determine whether a type of expense is necessary to carry out those duties on a classwide basis.

Accordingly, the Court finds that questions of law and fact are common to the putative class.

### B. Typicality

The typicality inquiry under Rule 23(a)(3) is permissive and requires that Plaintiffs establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The representative claims do not need to be "substantially identical" to those of absent class members, just reasonably coextensive. *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation and citation omitted).

Stryker argues that there are a number of factual differences between the named plaintiffs and the putative class members that establish that named plaintiffs are not typical of the proposed class. The Court is not persuaded.

Stryker notes that other putative class members submitted expense reports and received reimbursement, whereas Messrs. Hopkins and Puckett did not submit expense reports. Opp'n 18. Mr. Hopkins chose to live outside of his territory, whereas most other putative class members lived

11
Case No.: 5:11-CV-02786-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

within their territories. *Id.* These differences between Messrs. Hopkins and Puckett's damages and the damages of other putative class members do not defeat typicality because "each of the Plaintiffs' claims stem from the same allegedly unlawful policies and practices." *Lopez v. G.A.T. Airline Ground Support, Inc.*, 09CV2268-IEG BGS, 2010 WL 3633177, at *7 (S.D. Cal. Sept. 13, 2010).

The typicality requirement is met here because Plaintiffs have alleged an identical injury, namely that the putative class members were not fully reimbursed for their necessary business expenses under Cal. Lab. Code § 2802. This injury, which is common to the putative class, is a result of Stryker's alleged business expense policy. On this record, Stryker's business expense policy appears to be common across the three divisions and not unique to Messrs. Hopkins and Puckett. Therefore, Plaintiffs have sufficiently established that the named plaintiffs are typical of the proposed class. *Hanon*, 976 F.2d at 508 (9th Cir. 1992).

### C. Adequacy

Rule 23(a)(4) permits class certification only if the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Class representatives fail to meet the adequacy standard when the "conflicts between the class members are serious and irreconcilable." *Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D. 623, 629 (N.D. Cal. 2005) (citing *Sosna v. Iowa*, 419 U.S. 393, 403 (1975)).

Stryker does not challenge the adequacy of Plaintiffs' counsel, Marlin & Saltzman LLP and United Employees Law Group PC. The Court has reviewed the Haines and Marlin declarations and finds that Plaintiffs are represented by qualified and competent counsel. These two firms have a wealth of experience in employment class actions. ECF No. 26-1, 26-2.

Stryker does challenge the adequacy of Mr. Hopkins as a class representative. Stryker argues that Mr. Hopkins has a conflict of interest with the putative class members. Specifically, Stryker contends that Mr. Hopkins has worked for a competitor of Stryker's and used Stryker's

12
Case No.: 5:11-CV-02786-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

confidential information to sell the competitor's equipment to former Stryker customers, in direct competition with other putative class members. Stryker does not cite any authority for the proposition that Mr. Hopkins's work for a competitor after leaving Stryker creates a conflict to his seeking redress for claims that arose while he was a Stryker employee. Even assuming, without finding, that Mr. Hopkins was an inadequate class representative, only one of the named plaintiffs must be an adequate class representative in order to satisfy Rule 23(a)(4). *See Local Joint Executive Bd. of Culinary/Bartending Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 n.2 (9th Cir. 2001). Stryker does not challenge Mr. Puckett's adequacy. Thus, the Plaintiffs can satisfy adequacy even if Mr. Hopkins is inadequate. Nevertheless, the Court finds that Mr. Hopkins's interests are aligned with the putative class members' interests in recovering for unreimbursed necessary business expenses. *See Schulz*, 2012 WL 1439066, at *5 ("All of the proposed class members share the same interest in protecting their rights pursuant to California Labor Code § 2802.").

Accordingly, the Court finds that both class representatives and Plaintiffs' counsel are adequate.

### D. Predominance

To establish class certification pursuant to Fed. R. Civ. P. 23(b)(3), Plaintiffs must show that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." "The Rule 23(b)(3) predominance inquiry" is meant to "tes[t] whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The Ninth Circuit has held that "there is clear justification for handling the dispute on a representative rather than an individual basis" if "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication . . . ." *Hanlon*, 150 F.3d at 1022.

Stryker argues that individualized questions predominate as to: (1) the amount that sales representatives were reimbursed; (2) whether Stryker adequately compensated sales representatives for their business expenses; (3) whether a business expense was necessary; and (4) whether mileage is reimbursable. Opp'n 19-23. The Court has already rejected many of these arguments in

13
Case No.: 5:11-CV-02786-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

the Court's commonality analysis under Rule 23(a)(2). However, even though the predominance inquiry is similar to the commonality inquiry, the standard is "much higher" under Rule 23(b)(3)'s predominance inquiry. *Schulz*, 2012 WL 1439066, at *5. Therefore, the Court revisits Stryker's arguments in the context of Rule 23(b)(3).

Based on the record before the Court, common questions predominate in the inquiry as to whether Stryker's business expense reimbursement policy violated Cal. Lab. Code § 2802. The central question to be resolved will be determined based on evidence common to the class -- namely Defendants' documents and testimony. At this point, it appears that resolution of Stryker's potential liability under Cal Lab. Code § 2802 may be determined on a class-wide basis, based upon common, though factually disputed, proof.

Moreover, for reasons this Court finds persuasive, sister courts have rejected Stryker's arguments in similar section 2802 cases. For example, in *Schulz*, the defendants, like Stryker, argued that individual issues predominated because "the reimbursement claim involves an individualized inquiry into each technician's expenses, for example the distance driven between service calls and the particular plan selected for internet and cell phone services." 2012 WL 439066, at *6. The defendants also argued that they paid "a higher wage to cover the necessary expenses and thereby compl[ied] with *Gattuso*'s approval of paying increased compensation." *Id.* The *Schulz* court rejected these arguments because they related "to the amount of damages incurred by an individual technician." *Id.* The *Schulz* court stated: "The common question of whether Defendant's uniform reimbursement policy . . . complies with *Gatuso* can be answered on a classwide basis." *Id.* This Court agrees that this common question predominates here.

Similarly, in *Wilson*, the defendants, like Stryker, argued that common issues do not predominate, "because in order to prove which employees are owed business mileage expenses the Court would need to determine: (1) whether expenses incurred by use of personal vehicles were necessary-an individualized factual inquiry; [and] (2) whether and how many individual employees negotiated special deals with defendant for reimbursement of all expenses-an individualized factual inquiry." 2010 WL 5059522, at *7. Judge Illston found that "whether it was 'necessary' for the employees to attend the meetings and off-site trainings is a common question." *Id.* at *8. Judge

14
Case No.: 5:11-CV-02786-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Illston also found that "the fact that certain individuals may have struck special deals with their supervisors . . . to receive company cars, fuel cards or other arrangements so that all of their commute mileage and/or off-site travel expenses were fully reimbursed, does not undermine the predominance of the common questions or otherwise preclude certification." *Id.* So too here, Stryker's arguments regarding the individualized nature of the necessity of certain business expenses and some individuals' ability to obtain occasional reimbursement do not undermine predominance in this case. Moreover, in these circumstances -- where there is a commonly applicable expense reimbursement policy, common duties among putative class members, and expenses common to the class -- whether a particular business expense was necessary "is a common question that is better addressed on a motion for summary judgment or at trial than at class certification." *See id.*

Finally, in *Stuart*, the defendant, like Stryker, argued that individual managers' discretion to reimburse certain expenditures destroyed predominance. The court reasoned: "the fact that managers may have had some discretion to determine what [expenses] were incidental and which were not (and thus reimbursable) does not change the fact that the central issue in this case is whether there was a failure to reimburse, which would constitute a violation of the California Labor Code. . . . That legal issue-the legality of failing to reimburse employees for [expenses]-predominates this case. Determining who in fact was reimbursed and who was not will be a straightforward factual question that informs the remedy, and will likely be resolved by documents. Those determinations will not predominate this case." *Stuart*, 2009 WL 281941, at *15. So too here, that certain Regional Managers reimbursed more ordinary business expenses than others does not destroy the predominance of common issues.

At the hearing, Stryker argued that three cases -- *Guifu Li v. A Perfect Franchise, Inc.*, 5:10-CV-01189-LHK, 2011 WL 4635198 (N.D. Cal. Oct. 5, 2011), *Harris*, 753 F. Supp. 996, *Norris-Wilson*, 270 F.R.D. 596 -- supported the proposition that differences among putative class members' claimed expenses destroys predominance. These cases are inapposite. In *Li*, unlike here, the proposed class members had not identified "specific expenses or category of expenses," and as a result the proposed plaintiffs claimed reimbursement "over a wide and divergent range of

15
Case No.: 5:11-CV-02786-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

items." 2011 WL 4635198, at *14.  By contrast, here, as discussed above, Stryker's own documents list the categories of "the more *common* expenses incurred by sales rep in the course of business." 1st Anderson Decl. Ex. 5, at 1.  *Harris* and *Norris-Wilson* are distinguishable on the same basis.  *See Harris*, 753 F. Supp. at 1022 ("Harris has not demonstrated that there were common types of expenses incurred by Sales Representatives."); *Norris-Wilson*, 270 F.R.D. at 610 (recognizing that "if there were a single expense, or a set of discrete expenses, common to the entire putative class, and that class members were required to cover themselves, the Court would see the merits in class treatment," but finding that it was not clear that the expenses "were in the same ballpark across the class").

Therefore, the Court finds that common issues predominate.

### E.  Superiority of Class Action

Rule 23(b)(3) tests whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  Under Rule 23(b)(3) the Court must evaluate whether a class action is a superior method of adjudicating plaintiffs' claims by evaluating four factors: "(1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action." *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 469 (N.D. Cal. 2004) (citing *Zinser*, 253 F.3d at 1190-92).  Looking at these factors requires the Court to "focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at 1190 (internal quotations and citations omitted).

The parties here focus on the factors of judicial economy and manageability.  Plaintiffs argue that class treatment would avoid needless expenditure of additional time, effort and money that would be spent in individual lawsuits and the potential for inconsistent outcomes.  Plaintiffs also argue that individual lawsuits would rely on the same evidence of Stryker's practices and policies to prove liability.  Stryker argues that the individualized nature of damages defeats

superiority here. Opp'n 24 (citing *Harris*, 753 F. Supp. 2d at 1023). The Court agrees with Plaintiffs.

Unlike *Harris*, which found that class treatment was not superior in a section 2802 case, Plaintiffs here have shown that certain types of business expenses, such as mileage expenses, were common across class members. *Cf. Harris*, 753 F. Supp. 2d at 1022 ("there may be substantial variance as to what kind of expenses were even incurred by Sales Representatives in the first place"). If and when liability is established, calculating damages could likely be administered by using Defendant's records and putative class members' tax returns. *Wilson*, 2010 WL 5059522, at *9 ("[T]he Court believes that when the time comes for proof of damages and what is owed to the employees, that process will be determined largely by defendant's documents and manageable through a number of potential methods, including review by a special master or submission of claims by employees subject to challenge or rebuttal by defendant."); *see also Stuart*, 2009 WL 281941, at *15 ("Determining who in fact was reimbursed and who was not will be a straightforward factual question that informs the remedy, and will likely be resolved by documents."). Thus, this case does not present the manageability concerns that prevented certification in *Harris*.

The Court, therefore, finds that a class action is a superior method of adjudicating Plaintiffs' claims. Moreover, the Court finds that Plaintiffs have met their burden of establishing all four requirements under Rule 23(a) and the requirements under 23(b)(3) for Plaintiffs' section 2802 claim. Accordingly the Court finds that class certification is appropriate as to Plaintiffs' section 2802 claim. The Court finds that class certification is also appropriate as to Plaintiffs' UCL claim, because this claim is derivative of the section 2802 claim. *See Lozano*, 504 F.3d at 737. Accordingly, Plaintiffs' Motion for Class Certification is GRANTED.[10]

---

[10] Both parties object to the other party's evidence. *See* Opp'n 24-25; Reply 14-15. The Court need not reach these objections because the Court has not relied on this evidence in reaching its conclusions.

17

Case No.: 5:11-CV-02786-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### F. Proposed Class Notice and Class List

Given that the Court has concluded that class certification is appropriate for Plaintiffs' claims, the parties are ORDERED to meet and confer regarding a proposed notice that complies with Federal Rule of Civil Procedure 23(c)(2)(B) and file a joint stipulated class notice within 21 days of the date of this Order. If the parties cannot agree, then each side may file a proposed notice and a brief, up to three pages, in support of their proposed notice. To the extent that it has not yet done so, Stryker is also ORDERED to produce the class list to Plaintiffs' counsel within 14 days of the date of this Order.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion to certify the class as to Plaintiffs' section 2802 and UCL claims. The Court CERTIFIES the following class: "All individuals who: (1) were employed by defendant in California from April 20, 2007, until February 1, 2011; (2) held the title of 'Sales Representative'; and (3) worked in the Endoscopy, Communications, or Instruments Divisions. Excluded from this class are employees who worked in the Navigation Unit of the Instruments Division." The Court APPOINTS Mr. Hopkins and Mr. Puckett as class representatives and APPOINTS Marlin & Saltzman LLP and United Employees Law Group PC as class counsel. The Court ORDERS the parties to prepare the class notice and class list as set forth above. Within 14 days of the date of this Order, Plaintiffs shall file an amended complaint that amends the class definition to comport with the Court's certified class definition. Plaintiffs may not make any other substantive change to the complaint, unless Defendant stipulates to the change.[11]

**IT IS SO ORDERED.**

Dated: May 14, 2012

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

---

[11] Plaintiffs may amend the case caption and the formatting of the complaint to comply with the Civil Local Rules.