UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| JOHN HOPKINS, BRODY PUCKETT, on behalf of themselves, individually, and all others similarly situated, | ) ) ) | Case No. 11-CV-02786-LHK |
| | ) | **CLASS ACTION** |
| Plaintiffs, | ) ) | **ORDER GRANTING MOTION** |
| v. | ) ) | **FOR AWARD OF ATTORNEYS'** **FEES AND COSTS** |
| STRYKER SALES CORPORATION, a Michigan Corporation; and DOES 1 to 100, inclusive, | ) ) ) ) | |
| Defendants. | ) ) ) | |
| | ) | |

Before the Court is the Motion of Class Counsel for an award of attorneys' fees in the sum

of $1,416,666, and for costs in the sum of $69,715.88[1].  *See* ECF No. 57 ("Motion").  Defendant

does not oppose the Motion.  *See*  ECF No. 59.  Having considered the parties' submissions, the

relevant case law, and the parties' arguments at the January 31, 2013 hearing, the Court GRANTS

Class Counsel attorney's fees in the sum of $1,275,000 and costs in the sum of $69,715.88.

---

[1] In Class Counsel's Motion for Attorney's Fees and Costs, Class Counsel initially requested a cost award of $74,890.88.  However, at the January 31, 2013 final approval hearing, Class Counsel stated that Class Counsel was able to persuade one of the experts in this case to reduce his fee by $5,175.  Accordingly, Class Counsel reduced its costs request to $69,715.88.

Case No.: 11-CV-02786
ORDER GRANTING MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

# I.    ATTORNEYS' FEES

## A.    Legal Standard for Granting Attorney's Fees

The Ninth Circuit has stated that, in a common fund case like the instant case, a court may award attorneys' fees as a percentage of the common fund. *Paul, Johnson, Alston & Hunt v. Graulty ("Paul")*, 886 F.2d 268, 271 (9th Cir. 1989). The Ninth Circuit has endorsed a benchmark of 25% for attorney's fee awards. *Id.* at 272. That percentage amount can then be adjusted upward or downward depending on the circumstances of the case. *Id.* Indeed, "in most common fund cases, the award exceeds th[e] benchmark." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008). Percentage awards of between 20 and 30 percent are common. *See In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method."); *Vizcaino v. Microsoft Corp. ("Vizcaino II")*, 290 F.3d 1043, 1047 (9th Cir. 2002) ("The district court based its percentage award on *Bowles*, which states that '[i]n common fund cases, the 'benchmark' award is 25 percent of the recovery obtained,' with 20-30% as the usual range... [The] Ninth Circuit cases echo this approach." (*quoting Bowles v. Washington Dept. of Ret. Sys.*, 121 Wash. 2d 52, 72-73 (1993) and *citing Paul*, 886 F.2d at 271)).

Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino II*, 290 F.3d at 1048. The Ninth Circuit has approved a number of factors which may be relevant to the district court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See id.* at 1048-50. In addition to the aforementioned factors, district courts may also compare the proposed percentage award to the attorney's fee award that would be granted were the district court to use the lodestar method to determine fees. *Id.* at 1050.

## B.    Analysis

Class Counsel seeks an upward adjustment of the Ninth Circuit benchmark of 25 percent of

2

United States District Court
For the Northern District of California

the common fund to 33 and 1/3 percent of that fund.  Louis M. Marlin, one of Plaintiffs' attorneys, states that, in his experience, which includes approximately 40 years in litigation, were an individual to seek contingent representation against a defendant such as Stryker, the contingent rate would be from 33 and 1/3 percent to 40 percent.  Declaration of Louis M. Marlin in Support of Motion for Award of Attorneys' Fees and Costs, ECF no. 57-2 ("Marlin Decl."), ¶ 8.  As set forth below, the Court believes that, particularly in light of the substantial results achieved in this case, the factors set forth in *Vizcaino II* weigh in favor of granting Class Counsel an upward adjustment. However, the Court believes that a percentage award of 30 percent of the common fund is appropriate, rather than the 33 and 1/3 percent requested by Class Counsel.

### 1.    The Results Achieved

The Court believes that Class Counsel has achieved substantial results in this case.  Class Counsel has obtained a settlement in the amount of $4,250,000.  This fund will be shared amongst only 95 class members.  Moreover, 100 percent of the class members will recover their portion of the settlement fund, and class members will not have to submit claim forms in order to recover their share.  Significantly, there were no objections to the final settlement or Class Counsel's request for attorney's fees.  The average gross recovery (prior to deductions for attorney's fees and costs, lead Plaintiffs' enhancement awards, and administration costs) per class member will be substantial, more than $44,000 each.  Class Counsel represents that the gross recovery for each class member will represent between 85 and 100 percent of what Class Counsel estimates to have been the maximum possible recovery.  After deducting the $7,500 enhancement awards for each Representative Plaintiff, attorney's fees of 30 percent (which the Court believes to be the appropriate percentage for reasons that will be set forth below), and costs, the average recovery for each class member will be approximately $30,424.04.  The results achieved on behalf of the class by Class Counsel in this case are remarkable and weigh in favor of granting Class Counsel's request for a fee award of at least 30 percent.

### 2.    The Risks of Litigation

There were significant risks of litigation here.  Class Counsel, working with the Representative Plaintiffs, challenged Defendant's business practices, including Defendant's refusal

Case No.: 11-CV-02786
ORDER GRANTING MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    to pay employees for years of unreimbursed business expenses despite a change in its

2    reimbursement policies.  Defendant was represented by a defense firm that zealously litigated this

3    action from its inception.  Had Class Counsel failed to vigorously prosecute this case, or had Class

4    Counsel not been successful in obtaining class certification, it is unlikely that this substantial

5    settlement could have been achieved.  Notably, it was not until the class was certified that

6    Defendant proposed that the parties attempt to settle these claims via mediation.  *See* Marlin Decl.,

7    ¶ 12.

8                    **3.       The Skill Required and the Quality of Work**

9              Significant skill and quality work were involved in pursuing this action and effectuating

10   settlement.  The discovery that was undertaken by Class Counsel brought to light evidence of

11   Defendant's violations of California labor and unfair competition laws based on Defendant's

12   failure to reimburse its employees for certain ordinary business expenses.

13             As part of the ongoing litigation of this matter, in preparation for both mediation and trial,

14   Class Counsel employed the services of three experts to assist in a proper evaluation of this case.

15   These experts included an expert who evaluated financial data and reports provided by Defendant

16   in connection with the calculation of damages; an expert to conduct a survey of class members to

17   provide comprehensive information concerning the business expenses that class members were

18   personally aware of spending and which were not reflected on Defendant's records; and an expert

19   to provide calculations as to the actual cost of operating motor vehicles in the State of California in

20   connection with the unreimbursed mileage claim (one of the larger reimbursement claims in the

21   overall damage assessment).  Class Counsel willingly advanced the costs associated with these

22   experts in order to fully and competently prepare this matter for the benefit of the class.  Thus,

23   Class Counsel's extensive investigation, comprehensive discovery practice, and skillful preparation

24   resulted in a favorable Settlement for the Class.

25             In addition, Class Counsel investigated, researched, and filed a comprehensive motion for

26   class certification.  Despite the strong opposition to that motion, it was granted.  *See* ECF No. 31.

27                   **4.       The Contingent Nature of the Representation**

28

Case No.: 11-CV-02786
ORDER GRANTING MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

This case was conducted on an entirely contingent fee basis against a well-represented Defendant.   All of the financial risk of litigation was therefore assumed by Class Counsel, whose fee arrangement with Plaintiffs required Class Counsel to bear all of the costs of litigation and the costs of attorney and paralegal time, which was substantial.  Class Counsel took a significant risk in investing in this case and was able to secure a substantial victory on behalf of the class, resulting in the creation of a common fund of $4.25 million.

### 5.        Awards In Similar Cases

Class Counsel cites a number of wage and hour cases in which other District Courts in California have awarded fees of 33 1/3% or more:

*Singer v. Becton Dickinson & Co.,* No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) [33 1/3%];

*Ingalls v. Hallmark Mktg. Corp.,* No. 08-CV-4342-VBF (E) (C.D. Cal. Oct. 16, 2009) [33 1/3%];

*Pasquale v. Kaiser Foundation Hospitals*, Case No. 08-CV-785-MMA(NLS) (S.D. Cal. April 29, 2008) [33 1/3%];

*Fernandez v. Victoria Secret Stores, Inc.*, Case No. 06-04149 (C.D. Cal. July 21, 2008) [34%];

*Benitez et al. v. Wilbur*, Case No. 1:08-CV-1122 LJO GSA (E.D. Cal. Dec. 15, 2009) [33.3%];

*Chavez et al. v. Petrissans et al.*, Case No. 1:08-CV-00122 LJO-GSA (E.D. Cal. Dec. 15, 2009) [33.3%];

*Vasquez v. Coast Valley Roofing*, Case No. 1:07–cv–00227 OWW DLB, 266 F.R.D. 482 (E.D. Cal. 2010) [33 1/3%];

*Alvarado v. Nederend*, Case No. 1:08–cv–01099 OWW DLB, 2011 WL 1883188 (E.D. Cal. May 17, 2011) [33 1/3%];

*Romero v. Producers Dairy Foods, Inc.*, Case No. 1:05-cv-0484 DLB, 2007 WL 3492841 (E.D.Ca. Nov. 14, 2007) [33%].

The Court notes, however, that none of the cited cases are from the Northern District of

California.  Furthermore, in several of the cases, the 33 and 1/3 percent award was significantly less than the lodestar.  *See Alvarado*, 2011 WL 1883188 at *8 ("Class Counsel seeks an attorney's fee award of $165,523, or 33 1/3% of the Settlement amount.  This is significantly less than Class Counsel's asserted lodestar of $198,593.75."); *Vasquez*, 266 F.R.D. at 491 ("Class Counsel seeks an attorney's fee award of $100,000, or 33 1/3% of the common fund.  This is significantly less than Class Counsel's asserted lodestar of $178,475."); *Romero*, 2007 WL 3492841 at *2-4 (granting attorney's fees of $80,000 where lodestar was $257,584.50).  Here, as will be discussed below, the amount being sought is substantially more than the lodestar and the risk multiplier generated by the lodestar cross-check is on the high end.  Nevertheless, the cases cited by Plaintiff at the very least support the conclusion that some departure from the 25 percent benchmark is warranted.

### 6.    Comparison to Lodestar

In cases where courts apply the percentage method to calculate fees, it is common for courts to use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award.  *See Vizcaino II*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award").  In order to perform the lodestar cross-check, the Court calculates Class Counsel's lodestar by multiplying the number of hours worked by a reasonable hourly rate.  *See Vizcaino v. Microsoft Corp. ("Vizcaino I")*, 142 F. Supp. 2d 1299, 1305 (W.D. Wash. 2001) *aff'd,* 290 F.3d at 1043.  After determining the lodestar, the Court divides the total fees sought by the lodestar to arrive at a multiplier.  *See Vizcaino I*, 142 F. Supp. 2d at 1305.  The purpose of this multiplier is to account for the risk Class Counsel assumes when they take on contingent-fee cases. *See id.* ("To restrict Class Counsel to the hourly rates they customarily charge for non-contingent work-where payment is assured-would deprive them of any financial incentive to accept contingent-fee cases which may produce nothing.  Courts have therefore held that counsel are entitled to a multiplier for risk.").

If the multiplier is within an acceptable range, this adds further support to the conclusion that the fees sought are reasonable.  *See Vizcaino II*, 290 F.3d at 1051.  In determining whether a

Case No.: 11-CV-02786
ORDER GRANTING MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

United States District Court
For the Northern District of California

multiplier is appropriate, the following factors may be relevant:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Vizcaino I*, 142 F. Supp. 2d at 1306 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).  Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases.  *See e.g. Vizcaino II*, 290 F.3d at 1051 n.6 (finding that, in approximately 83 percent of the cases surveyed by the Court, the multiplier was between 1.0 and 4.0, with a "bare majority… 54%… in the 1.5-3.0 range").

Here, Class Counsel's total loadstar was $460,378.  *See* Motion at 13; Marlin Decl. ¶ 13; Declaration of Walter Haines in Support of Motion for Attorneys' Fees and Costs ¶ 8. Class Counsel attests that the loadstar was calculated using the hourly rates Class Counsel normally charges for wage and hour class action litigation.  *See* Marlin Decl. ¶ 13.  Based on a loadstar of $460,378, if the Court were to grant Class Counsel's requested 33 and 1/3 percent award, the multiplier would be 3.2.

In light of the remarkable award described above, the contingent nature of Class Counsel's fee arrangement, and the skill required in conducting this litigation properly, the Court believes that a multiplier of 2.76 is justified.  However, the Court finds that the 3.2 multiplier is at the higher end of the normal range for risk multipliers as determined by the Court in *Vizcaino II*.  *See id.*, 290 F.3d at 1051 n.6.  As will be discussed in more detail below, when considered in connection with the fact that the 33 and 1/3 percent is also at the high-end of the usual range and the work performed in this case, the relatively high risk multiplier weighs in favor of reducing the award sought by Class Counsel somewhat.

## C.      Conclusion Regarding Attorney's Fees

Having reviewed the factors above, the Court agrees with Class Counsel that an upward departure from the 25% benchmark is warranted in light of: (1) the $4.25 million settlement fund

**United States District Court**
For the Northern District of California

1   for 95 class members; (2) the 100 percent participation rate of the class in the settlement; (3) the

2   fact that class members do not have to submit claim forms in order to recover; (4) the fact that

3   there is no reverter; (5) the fact that the net average recovery for each class member will be

4   approximately $30,424.04; (6) the risk of litigation; (7) the skill required in conducting this

5   litigation properly; and (8) the contingent nature of Class Counsel's fee arrangement.  However,

6   the Court finds that the 33 and 1/3 percent award sought by Class Counsel is too high.

7   Several factors support this conclusion.  As an initial matter, the Court observes that the

8   "usual range" for fee awards in percentage cases is 20 to 30 percent.  *Vizcaino II*, 290 F.3d at 1047;

9   *see also In re Activision Sec. Litig.*, 723 F. Supp. at 1377 ("This court's review of recent reported

10   cases discloses that nearly all common fund awards range around 30% even after thorough

11   application of either the lodestar or twelve-factor method.").  Moreover, as set forth above, in

12   several cases cited by Plaintiff in which the fee award was 33 and 1/3 percent, the lodestar was

13   "significantly less" than the requested award.  *Alvarado*, 2011 WL 1883188 at *8; *see also*

14   *Vasquez*, 266 F.R.D. at 491; *Romero*, 2007 WL 3492841 at *2-4.  Furthermore, while the 3.2

15   multiplier Class Counsel requests in the instant case is within the range of multipliers commonly

16   found to be appropriate, it is at the high end of that range.  The Court also notes that in *Vizcaino II*,

17   where a multiplier of 3.65 was approved, the percentage awarded was only 28% of the common

18   fund.  *Id.*, 290 F.3d at 1049 (affirming 28% fee award).  While the Court certainly applauds Class

19   Counsel's efforts in this case, the Court does not believe that the work in this case, which consisted

20   principally of conducting discovery, bringing a successful motion for class certification, and

21   negotiating the settlement during a day-long mediation, or the result achieved in this case are

22   sufficient to justify granting Class Counsel's requested fee award of 33 and 1/3 percent, which is at

23   the high end of the usual range.[2]

24   The Court is cognizant of Class Counsel's representations that, if an individual class

25

_____

26   [2] In making this statement, the Court does not intend to imply that Class Counsel should be
punished for obtaining a settlement fairly early on in the case (*i.e.* before summary judgment).  *See*

27   *Vizcaino II*, 290 F.3d at 1050 (stating that "class counsel should [not] necessarily receive a lesser
fee for settling a case quickly").  Rather, the Court believes that the 30 percent award granted *infra*

28   adequately rewards Class Counsel for settling this case at this stage.

8

Case No.: 11-CV-02786
ORDER GRANTING MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

member sought contingent representation in this case, the market rate would have been between 33 and 1/3 percent and 40 percent of the recovery.  *See* Marlin Decl. ¶ 8.  However, the Ninth Circuit has cautioned courts not to place undue reliance on the market rate in determining the reasonable attorney's fees because, in class action cases, the market rate is often an "illusory" concept.  *See Vizcaino II,* 290 F.3d at 1049 ("While an exclusively market-based approach may have superficial appeal, in the context of class action litigation in which attorneys' fees are determined *post hoc* by the court (without regard to any private arrangement), it may in many cases be illusory").  Furthermore, the Court believes that Class Counsel's representations as to what the market rate would have been had individual class members sought counsel are not sufficient to justify Class' Counsel's request given that: (1) 33 and 1/3 percent is slightly above the 30 percent upper limit for the "usual range" of percentage awards, as that range was determined by the Court in *Vizcaino II*, and (2) Class Counsel's request for a 33 and 1/3 percent award yields a 3.2 multiplier, which is at the high end of the common range for risk multipliers.

For the reasons set forth above, the Court believes an award of 30 percent of the common fund is appropriate.  Such an award represents a multiplier of 2.76, which falls within the "majority" range for risk multipliers.  *See id.* at 1051 n.6 (finding that, of the cases surveyed by the Court, the multiplier in 54 percent of cases was "in the 1.5-3.0 range").  Accordingly, the Court awards Class Counsel attorney's fees in the amount of $1,275,000.  The Court believes that this amount adequately compensates Class Counsel for their work in this case.

## II.        COSTS AND EXPENSES

Class Counsel also requests reimbursement of their out-of-pocket expenses incurred to prosecute this class action. These expenses were incidental and necessary to the effective representation of the Class.  *See, Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994).

Here, Class Counsel performed extensive discovery, including detailed document review and depositions around the United States, and also performed detailed damages analyses prior to mediation.  The necessary expenses also included the retention of three experts who assisted Class Counsel in preparing this case for both mediation and a possible trial.  By obtaining all of these analyses, Class Counsel were able to effectively and accurately evaluate both the potential damages

9

in this case, as well as the strengths and weaknesses of the damage calculations they would be prepared to present at trial.  Class Counsel shall recover costs and expenses of $69,715.88.

**IT IS SO ORDERED.**

Dated: February 6, 2013

LUCY H. KOH
United States District Judge

Case No.: 11-CV-02786
ORDER GRANTING MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS